```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION
```

| | |
|---|---|
| NICOLE REEVES, | * |
| Plaintiff, | * |
| vs. | *  CASE NO. 4:21-CV-80 (CDL) |
| COLUMBUS CONSOLIDATED GOVERNMENT, | * |
| | * |
| Defendant. | * |

O R D E R

Although the Court is not inviting a Rule 11 motion, the Court finds that Plaintiff's claims come close to the line. It should be obvious, particularly to a lawyer, that not every adverse employment action suffered by a black employee amounts to racial discrimination. And yet that's all Plaintiff has here. Because Plaintiff's counsel insisted upon pursuing Plaintiff's non-meritorious grievance, the taxpayers of Columbus, Georgia of all races have likely incurred substantial legal fees to defend this action which a reasonable lawyer should have recognized at some point during these proceedings was a loser. For the reasons explained in the remainder of this Order, Defendant's motion for summary judgment (ECF No. 25) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Plaintiff Nicole Reeves, a black former police officer for the Columbus Police Department ("CPD"), claims that race was a motivating factor in her suspension without pay and her eventual termination of employment. Viewed in the light most favorable to Reeves, the record reveals the following facts.

**I. Events Leading to Reeves's Suspension**

Reeves was employed by Defendant Columbus Consolidated Government ("CCG") as a CPD police officer from December 2015 through October 2020. The incident giving rise to her discipline and subsequent termination occurred shortly after midnight on August 9, 2019. At that time, she made the fateful decision to call 911 and report her personal vehicle stolen. Reeves Dep. 141:9-11, Apr. 11, 2022, ECF No. 27. Police later found the

2

vehicle wrecked on Schatulga Road, less than two miles from where Reeves called 911. *Id.* at 23:10-14; Boren Aff. ¶ 4, ECF No. 25-2. The investigating officers found no evidence that the car had been stolen. As they noted in their report, the key "ignition had not been tampered with, and Reeves had the only working key in her possession." Boren Aff. ¶ 4; Vardman Dep. 79:11-18, ECF No. 30. They suspected that Reeves had falsely reported the vehicle as having been stolen. Based on their follow up investigation, they concluded that Reeves, who had been drinking alcohol that evening, crashed her vehicle, lied to them about it, and asked her friends to lie to the officers. Boren Aff. ¶ 4; Vardman Dep. 61:19-62:3, 81:19-82:8. Reeves admits that the investigation was not racially motivated.

On August 16, 2019, officers arrested Reeves and charged her with "falsely reporting that her vehicle had been stolen," "providing false statements during the investigation to sworn police officers," violating her oath of office "for those false statements," and failing her "duty to report an accident." Vardman Dep. 58:23-59:10; Boren Aff. ¶ 5. Following CPD policy, the police chief at the time, Ricky Boren, suspended Reeves without pay after he considered the evidence and circumstances surrounding Reeves's arrest. The suspension remained in effect while the matter was investigated further to determine whether Reeves had violated CPD policy. Boren Aff. ¶¶ 6-8.

**II.  Investigation and Termination**

The internal investigation lasted approximately one year. It included "in-person interviews, reviews of relevant criminal reports and documents, and consideration of physical and testimonial evidence." Blackmon Aff. ¶ 5, ECF No. 25-3. This evidence consisted of "911 audio recordings, bodycam video footage, a polygraph test, call records, text messages and a location 'pin drop' cell phone message, which placed Reeves at the scene of the accident" that started it all. *Id.*

The investigators made the following factual findings. On the night Reeves reported her car stolen, she and her friends—including Raini Smith, Christopher Cooley, and Jennifer Tucker—drank alcohol. Just before midnight, Reeves attempted to drive home, but wrecked her car on Schatulga Road. Reeves's cell phone sent a pin drop at the scene of the accident just after midnight to Tucker's cell phone. According to statements and physical evidence, Smith and Cooley then went to the accident scene and attempted to move the car. Thereafter, they brought Reeves back to the house where they had been drinking, and Reeves called 911 and reported her car stolen. Later that night, when she returned to the accident scene, Reeves possessed the only working key to the car, and no evidence suggested that the car's key "ignition had been tampered with or otherwise accessed." *Id.* ¶ 8. On January 16, 2020, Reeves underwent a polygraph examination in which

4

the examiner asked her whether (1) she asked Cooley and Smith to assist her with moving the wrecked vehicle, (2) she drove the vehicle when the accident occurred, (3) she falsely reported the vehicle stolen, and (4) she location dropped Tucker from the accident scene.[1] The examiner assessed that her answers to these questions were "indicative of deception." Blackmon Aff. Ex. A, Polygraph Report 1, ECF No. 25-3 at 8.

Reeves claimed that an unknown thief broke into the house, took her keys, and stole her car. According to Reeves, the thief then returned to the house and returned the keys without detection. She explained the pin drop at the accident scene as further evidence of the genius of this mysterious thief, who she claims must have taken her cell phone to the scene, made the pin drop there, and then returned the phone with the keys. As an alternative explanation, Reeves speculated that, if the thief did not take her phone, he manipulated her account to send the pin drop. Blackmon Aff. ¶ 8. Needless to say, the experienced investigators found Reeves's story implausible and inconsistent with the credible evidence. They thought she was lying.

---

[1] Pin or location dropping allows a smartphone user to easily share GPS coordinates with others by marking the user's position in a map application, which "can help a friend find you in a remote location." Mara Anton, *How to Find a Dropped Pin on iPhone or Google Maps*, TechTheLead (Aug. 4, 2022), https://techthelead.com/how-to-find-a-dropped-pin-on-iphone-or-google-maps/.

The investigation concluded on July 24, 2020. The investigators determined that Reeves's conduct violated eight CPD policies: "(i) Oath of Office, (ii) Standard of Conduct, (iii) Conformance to Laws, (iv) Commission of Crime, (v) Neglect or Dereliction of Duty, (vi) Conduct Unbecoming, (vii) Truthfulness, and (viii) Actions of Insubordination." *Id.* ¶ 10. They also concluded that she violated two CCG work rules: "(i) Conduct that adversely reflects on the employee's performance or on the operation or reputation of CCG and (ii) Conduct constituting a felony." *Id.* The investigators specifically recommended that Chief Boren fire Reeves.

On October 9, 2020, CPD held a show cause hearing in which they informed Reeves of the findings and recommendations and offered Reeves an opportunity to respond. Reeves did not speak during the hearing. After the hearing and relying on the investigation's substantiation of Reeves's offenses, Chief Boren offered her the opportunity to resign. When she refused, Boren fired Reeves for violating CPD and CCG policies. Reeves admits that Boren never said or did anything to make her believe that he fired her because of her race.

**III. Subsequent Administrative Appeals**

Reeves appealed her suspension and termination pursuant to CCG policies. Hollowell Aff. ¶ 3, ECF No. 25-4. At the first step in the appeals process, the CCG Human Resources Department

6

investigated Reeves's claims, reviewed her personnel file and applicable policies, and interviewed personnel with relevant knowledge. *Id.* ¶ 5. Following their investigation, CCG HR Director Reather Hollowell agreed with Boren's decision to fire Reeves and found no evidence of unfair treatment. *Id.* ¶ 6. Reeves next appealed to CCG City Manager Isaiah Hugley, who agreed with Hollowell's findings. *Id.* ¶ 7. Finally, Reeves appealed to the CCG Personnel Review Board, which unanimously affirmed her termination on June 23, 2021. *Id.* ¶¶ 8-9.

After exhausting her administrative remedies with the EEOC, Reeves filed this present action against CCG alleging that it violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* when it suspended and fired her. She claims that her race was a motivating factor in those decisions.[2] CCG moves for summary judgment, arguing that Reeves has pointed to no evidence from which a reasonable jury could conclude that race was a motivating factor in her suspension or termination.

## DISCUSSION

To determine whether evidence exists that race was a motivating factor in these adverse employment actions, the Court begins with a search for direct evidence. Finding none here, the

---

[2] The Court previously dismissed all her other claims. *Reeves v. Columbus Consol. Gov't*, No. 4:21-CV-00080-CDL, 2021 WL 5451146, at *1 (M.D. Ga. Nov. 22, 2021).

7

Court then must evaluate the circumstantial evidence.³ The traditional *McDonnell Douglas* burden-shifting framework helps with that analysis. *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc). Under this framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated similarly situated employees outside her class more favorably." *Id.* at 1220-21 (internal quotation marks omitted). If the plaintiff makes a prima facie case of discrimination, then the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *Id.* at 1221. Finally, if the employer articulates such a reason, then the burden shifts back to the plaintiff to show that this reason was pretext for unlawful

---

³ While Reeves makes a limited conclusory statement in her response that direct evidence of discrimination exists, she acknowledges that no direct evidence of racial discrimination existed either in the false report investigation or Boren's decision to terminate her. She has utterly failed to direct the court to any direct evidence that race was a motivating factor in these adverse employment actions. *See Giles v. BellSouth Telecomms., Inc.*, 542 F. App'x 756, 760 (11th Cir. 2013) (per curiam) ("[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." (internal quotation marks omitted) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004), *abrogated on other grounds by Lewis*, 918 F.3d at 1218)). Reeves doesn't even point to "non-blatant" racist remarks.

8

discrimination. *Id.* In the summary judgment context, the Court assesses whether the plaintiff created a genuine factual dispute on these elements.

CCG argues that Reeves's prima facie case fails because she has not identified a similarly situated employee outside her class that CPD treated more favorably. Reeves points to three white CPD officers as comparators: Clay Watkins, Ashley Still, and Ryan Vardman.[4] While these officers are of a different race than Reeves, they are not "similarly situated in all material respects" to her. *Id.* at 1226. To be similarly situated, the comparator generally needs to have engaged in the same basic misconduct, been subjected to the same employment policies, been supervised by the same supervisor, and shared a similar employment and disciplinary history as the plaintiff. *Id*. at 1227-28. These alleged comparators don't come close.

Watkins's misconduct related to an on-duty unjustified use-of-force incident. CPD placed him on leave without pay after the Georgia Bureau of Investigation ("GBI") criminally charged him; he was subsequently fired when an investigation substantiated that he violated CPD policies. Jeffery Bridges Aff. ¶ 4, ECF No. 25-6. Still's misconduct consisted of an on-duty failure to report

---

[4] Although her complaint appears to offer over a dozen potential comparators, Reeves now limits her proffered comparators to these officers.

9

Case 4:21-cv-00080-CDL   Document 42   Filed 04/03/23   Page 10 of 14

evidence. After investigating a complaint about the unreported evidence, CPD suspended Still without pay for three days. Reeves Dep. Ex. 9, Sept. 27, 2022, Employee Disciplinary Record 1, ECF No. 28-2 at 222. Vardman had two disciplinary matters. The first involved a false statement to a supervisor about an on-duty use-of-force incident, which he corrected minutes after making it. After his supervisor determined that Vardman violated CPD policies on using force and reporting honestly, CPD suspended him for two days without pay, but never criminally charged him. Vardman Dep. 25:6-26:18. Vardman's second disciplinary matter arose from his use of deadly force against a man wanted for murder who, during pursuit, attempted to injure other officers and pulled out a gun; CPD suspended Vardman with pay while CPD and GBI investigated whether Vardman was justified in using deadly force. *Id.* at 26:19-30:8, 33:21-23; Blackmon Dep. 44:8-10, ECF No. 29. CPD determined that Vardman's use of deadly force was justified, and GBI cleared Vardman of any criminal act. Reeves Dep., Apr. 11, 2022, at 100:20-101:7.

None of these proffered comparators are close to being similarly situated in all material respects to Reeves. For the substantiated misconduct incidents, they all occurred on-duty and were subject to different policies and procedures than Reeves's off-duty misconduct. Furthermore, the nature of the misconduct was completely different. They did not involve falsely reporting

10

a crime to cover up an alcohol-related motor vehicle accident, and then encouraging witnesses to lie about it. There is also no evidence that the comparators were not properly and proportionately disciplined for their misconduct.[5] *Lewis*, 918 F.3d at 1222–23 ("Treating *different* cases differently is not discriminatory, let alone intentionally so."). Because Reeves's proffered comparators are not similarly situated in all material respects to her, she has failed to establish a prima facie case of Title VII race discrimination.

Reeves's failure to establish a prima facie case ends the matter, but, for the sake of completeness, the Court further evaluates whether she could survive summary judgment even if she established a prima facie case. She could not. She has produced no evidence from which a reasonable factfinder could conclude that her employer's legitimate, non-discriminatory reasons for suspending and firing her were pretextual. After her arrest and following CPD procedures, Boren placed Reeves on leave without pay pending an investigation into her actions. *See Tyler v. Kia Motors Mfg. Georgia, Inc.*, 702 F. App'x 945, 950 (11th Cir. 2017) (per curiam) (finding, in a Title VII retaliation case, that the

---

[5] The seriousness of the comparators' misconduct relative to Reeves's does not affect whether they are similarly situated in all material respects. *See McPhie v. Yeager*, 819 F. App'x 696, 700 (11th Cir. 2020) (per curiam) ("[T]he fact that the misconduct of [the plaintiff's] identified comparators was serious does not make their misconduct similar to [the plaintiff's], especially since it was reasonably distinguishable from his.").

11

employer had a legitimate non-retaliatory reason to suspend an employee pending an investigation into his wrongdoing). Then, following an extensive investigation into Reeves's actions and a show cause hearing where Reeves had the opportunity to rebut its conclusions, Boren terminated her for violating several CPD and CCG policies. *See Richardson v. Dougherty Cnty.*, 185 F. App'x 785, 790 (11th Cir. 2006) (per curiam) (concluding that an investigation's substantiation of the plaintiff's misconduct gave the employer a legitimate non-discriminatory reason to terminate the employee); *Boone v. City of McDonough*, 571 F. App'x 746, 752 (11th Cir. 2014) (per curiam) (concluding that a police department had a legitimate non-discriminatory reason to fire an officer because she committed misconduct with her police department). Thus, CPD had legitimate, non-discriminatory reasons for placing Reeves on leave without pay and terminating her.

To rebut these legitimate non-discriminatory reasons, Reeves had the burden of addressing them "head on[; she] cannot succeed by simply quarreling with the wisdom of that reason." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018) (internal quotation marks omitted) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)). She may certainly attempt to demonstrate pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in CPD's proffered reasons "that a reasonable

12

factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (per curiam) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–58 (2006) (per curiam)). But she points to no such "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions." There is no evidence that Boren's decision to place her on leave without pay pending the investigation was pretextual; he was simply following existing policy. She has failed to convincingly rebut the extensive investigation's factual findings. And she has not even attempted to suggest that Boren did not believe that she violated several CPD and CCG policies and fired her for those violations. *Winborn v. Supreme Beverage Co.*, 572 F. App'x 672, 675 (11th Cir. 2014) (per curiam) ("When considering whether an employee's termination based on alleged misconduct was merely a pretext, the proper inquiry is whether the employer believed that the employee was guilty of misconduct and whether that belief was the reason for the employee's discharge." (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991))). Because Reeves did not meet CPD's articulated and non-discriminatory reasons for its decisions head on with evidence from which a reasonable factfinder could find them unworthy of belief, Reeves has not demonstrated that those reasons were a pretext for unlawful discrimination.

Accordingly, her claim fails under the *McDonnell Douglas* framework even if she could establish a prima facie case.[6]

## CONCLUSION

For the foregoing reasons, the Court grants CCG's summary judgment motion (ECF No. 25).

IT IS SO ORDERED, this 3rd day of April, 2023.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[6] Presumably recognizing that her claim cannot survive *McDonnell Douglas,* Reeves reaches for the "convincing mosaic of circumstantial evidence" lifeline. But it cannot rescue her claim. It is now well recognized that a plaintiff may avoid summary judgment by presenting a "convincing mosaic of circumstantial evidence." But the looseness of this language does not mean that the standard can be easily met. A plaintiff "may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (internal quotation marks and citation omitted). No such evidence exists here. Plaintiff argues that Defendant's disparate treatment of Watkins alone gets her to a jury. The Court has previously explained why Watkins is not a valid comparator for purposes of a prima facie case. This single piece of non-probative evidence certainly does not create a convincing mosaic from which a reasonable jury could infer that Reeves's race had anything to do with her suspension and termination.